## John C. Murphy et al. v. Theodore Nilles et al.

1. MARRIED WOMEN—*Husband's Earnings with the Wife's Money.*— If a married woman advances her own separate money, and places the same in the hands of her husband for the purpose of carrying on any general business, although the same be carried on in the wife's name, if

the husband by his labor and skill increase the fund, the profits so made will not constitute a separate estate of the wife, but will be liable for the debts of the husband.

2. LACHES—*When Not Imputable.*—Laches was held not imputable to a delay of more than ten years in filing a bill to set aside a fraudulent conveyance.

**Creditor's Bill.**—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

### STATEMENT OF THE CASE.

This is a creditor's bill which seeks to reach property, the legal title to which is in the name of Lizzie M. Murphy, wife of John C. Murphy, the object of the bill being to subject such property to judgments against Mr. Murphy.

BYAM & WEINSCHENK, attorneys for appellants.

The creditors of an insolvent have no claim upon his services; he may give them away by working gratuitously for another. Sexton v. Martin, 37 Ill. App. 537.

Creditors can not compel their debtor to work and earn wages for their benefit; hence they do not defraud them if they choose to give away their services by working gratuitously for others. Abbey v. Devo, 44 N. Y. 343–348.

Since the act of 1874, a married woman may have her own separate property, and make contracts and do business as a *femme sole,* and may avail herself of the services and agency of her husband, in the conduct of her business or management of her property, without necessarily subjecting the profits arising from his management to the claims of his creditors. Lachman v. Martin, 139 Ill. 450.

A husband may, in the management of his wife's business or separate property, work for her, as any other person might, without compensation. Lachman v. Martin, 139 Ill. 450.

There is no artificial, fixed or determinate rule according to which the defense of *laches* is applied. Each case as it arises must be decided according to its own peculiar circum-

stances, taking into consideration all the elements which affect the question. Johnson v. Johnson, 5 Ala. 90; Robertson v. Mowell, 66 Md. 530; Wilson v. Anthony, 19 Ark. 16; Morse v. Hill, 136 Mass. 60; Paschall v. Hinderer, 28 Ohio 568; Bell v. Moon, 79 Va. 341; Twin Lick Oil Co. v. Marbury, 91 U. S. 587.

*Laches* is a question of fact upon the evidence; an equitable defense determinable by the particular facts and circumstances of the case. Pike v. Martindale, 91 Mo. 268.

After a delay of seven years from the sale of land under a power in a mortgage, the mortgagor will be cut off in equity from avoiding the sale for mere irregularities, in the absence of fraud or any equitable excuse for the delay. Dempster v. West, 69 Ill. 613.

The doctrine of acquiescence should be favorably regarded in this State, where the value of real estate is so rapidly changing, and persons are under strong temptation to search for defects in sales made years ago in payment of debts, and with which the debtors at the time were perfectly content, and where all parties affected by the sale have remained for years equally silent and satisfied. Burr v. Borden, 61 Ill. 389.

The remedy by bill to rescind an executed contract for the exchange of land, on the ground of fraudulent misrepresentation, must be invoked with reasonable diligence. A delay of seventeen months after the discovery of the fraud before filing the bill to rescind is an unreasonable delay, which a court of chancery will not tolerate. Cox v. Montgomery, 36 Ill. 396.

When a party has knowledge of the facts entitling him to equitable relief, and rests without taking any steps to assert his rights for nearly seven years, giving no excuse for his delay except ignorance of the law, his *laches* will be such as to bar his right to relief. Briet v. Yeaton, 101 Ill. 245.

Where a party, with full knowledge of all the facts, sleeps upon his rights for nineteen years without asserting his equities, and no sufficient excuse is shown for the delay, his laches will be such as to present a bar to relief in a court of equity. Castner v. Walrod, 83 Ill. 171.

THOMAS S. McCLELLAND, attorney for appellees, contended that money realized by a husband arising from his skill, knowledge and labor, with use of money claimed by the wife, becomes the property of the husband. Robinson et al. v. Brems et al., 90 Ill. 351; Wilson v. Loomis, 55 Ill. 352; Lachman v. Martin, 139 Ill. 450; Wortman v. Price, 47 Ill. 22; Hackett v. Bailey, 86 Ill. 74; Patton v. Gates, 67 Ill. 164; Herbert v. Herbert, 144 Ill. 115; Trapnell v. Conklyn, 37 W. Va. 242.

Money saved by a wife from allowances by husband subject to his debts. Wisconsin Granite Co. v. Gerrity, 144 Ill. 77; Abbot v. Wetherby, 6 Wash. 507; 36 Am. St. R. 176.

Board money belongs to husband when he furnishes provisions, house, servants, etc. Bloodgood v. Meissner, 84 Wis. 452; New v. Oldfield, 110 Ill. 138.

Profits by husband in speculating on his wife's money belongs to the husband. Petingale v. Barker (D. C.), 20 Wash. Law Rept. 738.

Fraudulent conveyance. Inadequacy of price, etc. Murtha v. Curley, 90 N. Y. 372; Gordon v. Reynolds, 114 Ill. 118; Jones et al. v. King et al., 86 Ill. 225; Fox v. Peck, 151 Ill. 226; Winstonley v. Gleyie, 146 Ill. 27; Snyder v. Partridge, 138 Ill. 173; Calan v. Stathan, 23 How. 477; Clement v. Moore, 6 Wall. 299.

Transactions between husband, wife and near relatives closely scrutinized. Coale v. Moline Plow Co., 134 Ill. 350; Tomlinson v. Matthews, 98 Ill. 187; Schroeder v. Walsh, 120 Ill. 411; Frank v. King, 121 Ill. 250; Horton v. Dewey, 53 Wis. 410; Oldfield v. New, 110 Ill. 138; Wesselhoeft v. Cudahy Packing Co., 44 Ill. App. 128.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It appeared in this case that Mrs. Lizzie Murphy having $1,000 in money, allowed her husband to use the same speculating in jury warrants, that thereby he made a profit of $2,000, and the $3,000 was invested in the purchase of certain lots, the title to which was taken and stands in the name of Mrs. Murphy.

Upon a final hearing the court found that the $2,000 profits was the property of Mr. Murphy, and that Mrs. Lizzie Murphy and Mr. John Murphy, wife and husband, were tenants in common of the real property purchased with the said $3,000, and that to the extent of an undivided two-thirds of the said property, Lizzie M. Murphy holds title to the same in trust for said John C. Murphy, and that the same is subject to be sold to satisfy and pay said several judgments, costs and interest.

If a married woman advances her own separate money, and places the same in the hands of her husband for the purpose of carrying on any general business, although the same be carried on in the wife's name, if the husband, by his labor and skill, increase the fund, the profits so made will not constitute a separate estate of the wife, but will be liable for the debts of the husband. Robinson et al. v. Brems et al., 90 Ill. 351; Wilson v. Loomis, 55 Ill. 352, and cases cited; Lachman v. Martin, 139 Ill. 450; Wortman v. Price, 47 Ill. 22; Hackett v. Bailey, 86 Ill. 74; Patton v. Gates, 67 Ill. 164; Herbert v. Herbert, 144 Ill. 115.

The court also made the following finding:

" The court further finds that said John C. Murphy married said Lizzie M. Murphy on, to wit, July 18, 1877.

The court further finds that at the date of said marriage, and before, said John C. Murphy was the owner in fee simple and of record of the following real estate, to wit: Lots 13, 14 and 15, block 1; lots 1, 2, 3, 4, 5, 6 and 9, block 4; lots 5, 11, 12 and 13, block 5; lots 4, 12, 13 and 14, block 6, and lot 6, block 11; also lot 2, block 5, all in Murphy's addition to Rogers Park.

The court finds that on, to wit, March 14, 1878, while said John Murphy was indebted as aforesaid, he, said John Murphy, his said wife, Lizzie M. Murphy, joining therein, executed a warranty deed to said Robert R. Sampson, a brother-in-law of said John Murphy, conveying to said Sampson the first 19 of said lots, being all thereof except said lot 2, block 5, for the nominal consideration of $500; although said lots were regarded by said John and Lizzie Murphy as being worth about $500 each.

The court further finds that at the time of said conveyance it was understood and stated by and between the parties to said deed that said John C. Murphy could have a reconveyance of said lots from said Sampson at any time upon repaying or refunding said sum of $500, and that said John Murphy made out the deed and recorded it, and took the same from the records and looked after the payment of taxes on said nineteen lots, while said Sampson held title thereto.

The court further finds that on, to wit, November 19, 1885, said Robert R. Sampson reconveyed, by warranty deed, said nineteen lots to said Lizzie M. Murphy for the consideration expressed in said deed of $500.

The court further finds that at the time of said conveyance to said Sampson, said nineteen lots were of much greater value than $500, and that they increased in value between that time and November 19, 1885, when Sampson reconveyed to Mrs. Murphy, and that it was understood Sampson would not sell or dispose of the lots without the co-operation of said John Murphy, and that all the business was done by said John C. Murphy, he preparing and recording the deed from Sampson to Mrs. Murphy. That said Sampson received no interest and paid taxes on said lots during the seven years and eight months he held title to same in sum of $133.86.

The court further finds that said conveyance of said nineteen lots by said John C. Murphy to his brother-in-law, Sampson, was done in fraud of the rights of said complainants, creditors of said Murphy, and that any money given by said Sampson to said Murphy and expressed in said deed of March 14, 1878, from Murphy to Sampson, was in effect and intent a loan, and that any consideration paid to said Sampson for a reconveyance of said nineteen lots to said Lizzie M. Murphy on November 19, 1885, was in fact the money of said John C. Murphy and that the conveyance to said Lizzie M. Murphy instead of to said John C. Murphy, was for the purpose of keeping said lots out of the reach of said complainants, and a fraud on their rights as creditors of said John C. Murphy, and that said Lizzie M. Mur-

phy now holds the legal title to said nineteen lots in trust for said John C. Murphy as against said complainants, and that said nineteen lots should be subjected to the payment of said judgments of said complainants."

We see no sufficient reason for setting aside the finding in this regard.

Appellants claim that these nineteen lots were purchased from Sampson with money belonging to Mrs. Murphy.

As to how she obtained this money, she testifies:

"I got the money from my husband to pay interest. When I get money from my husband and save it, I claim it belongs to me. I have paid taxes on the property. I got the money from Mr. Murphy to pay taxes and special assessments. I sold milk; we have had three or four cows; Mr. Murphy bought some; I bought some with Mr. Murphy's money.

The $500 I paid Sampson for the nineteen lots, I derived through my mother, and money I received from my husband and saved in household expenses. I spent part of the money I received from my mother in my own private matters. I can not tell how much of it was from my husband, how much from boarders, or selling milk."

The transactions relative to these lots, occurring as they did between husband, wife and brother-in-law, are such as courts will carefully scrutinize, and will not suffer property of the husband thus acquired to be held by the wife, free from the just claims of his creditors, unless the proof that it has been acquired by the wife out of her separate means be clear.

We see no reason for applying the equitable doctrine of *laches* to the delay of complainants in seeking to set aside the conveyance to Mr. Sampson or Mrs. Murphy.

Neither of appellants have acquired any equitable right as against complainants by reason of their delay in filing the bill in this case.

The decree of the Superior Court is affirmed.