JOHN C. MURPHY et al.

v.

THEODORE NILLES et al.

*Filed at Ottawa April 3, 1897.*

1. EVIDENCE—*burden of proof when creditors seek to reach money collected by wife on fire insurance policy.* Creditors seeking to reach the proceeds of a fire insurance policy collected by the wife on property conveyed to her in consideration of her joining with her husband in conveying his property, have the burden of showing that she had not insured the same for her own benefit.

2. HUSBAND AND WIFE—*profits on wife's capital used in husband's business become his property.* Where a wife furnishes capital to her husband, with permission that he employ the same in speculations on his own account and in conducting his business, the profits on the same from investments are subject to claims of his creditors.

3. A conveyance of property by an insolvent to a third party, and a subsequent purchase of the same by the wife, are held, under the particular facts and circumstances discussed in the opinion, to be in fraud of creditors.

*Murphy* v. *Nilles*, 62 Ill. App. 193, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

BYAM & WEINSHENK, for appellants:

A married woman may manage her property through the agency of her husband, and the produce and profit thereof will be hers. *Knapp* v. *Smith*, 37 N. Y. 278.

A wife may employ her husband to transact her business, and although no agreement for his compensation is made between them, the property does not thereby become subject to his debts. *Gage* v. *Dauchy*, 34 N. Y. 293.

A married woman may manage her separate property through the agency of her husband, and is entitled to the profits of a business conducted by him upon her capital, and he has no interest in the transaction but that of an agent. *Buckley* v. *Wells*, 35 N. Y. 518.

The husband may work for his wife as any other person might, without any compensation, and his creditors could not thereby gain any rights against the wife or her property.   *Abbey* v. *Deyo,* 44 N. Y. 346.

THOMAS S. McCLELLAND, for appellees:

Money realized by a husband arising from his skill, knowledge and labor, with use of money claimed by the wife, becomes the property of the husband.   *Robinson* v. *Brems,* 90 Ill. 351; *Wilson* v. *Loomis,* 55 id. 352; *Lachman* v. *Martin,* 139 id. 450; *Wortman* v. *Price,* 47 id. 22; *Hackett* v. *Bailey,* 86 id. 74; *Patton* v. *Gates,* 67 id. 164; *Herbert* v. *Herbert,* 144 id. 115; *Trapnell* v. *Conklyn,* 37 W. Va. 242.

Money saved by a wife from allowances by her husband is subject to his debts.   *Granite Co.* v. *Gerrity,* 144 Ill. 77; *Abbott* v. *Wetherby,* 6 Wash. 507.

Profits by a husband in speculating on his wife's money belong to him.   *Pettingale* v. *Barker,* 20 Wash. L. R. 738.

Transactions between husband, wife and near relatives are closely scrutinized.   *Coale* v. *Plow Co.* 134 Ill. 350; *Tomlinson* v. *Matthews,* 98 id. 187; *Schroeder* v. *Walsh,* 120 id. 411; *Frank* v. *King,* 121 id. 250; *Horton* v. *Dewey,* 53 Wis. 410; *Oldfield* v. *New,* 110 Ill. 138; *Wesselhoeft* v. *Packing Co.* 44 Ill. App. 128.

Property purchased by a married woman when her husband is insolvent is not presumed to be paid out of her own private funds.   The burden is on her to show that the husband is not the meritorious source of the funds. *Seitz* v. *Mitchell,* 94 U. S. 580.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a creditor's bill brought by Theodore Nilles and Henry P. Kransz, against John C. Murphy and his wife, Lizzie M. Murphy, Robert R. Sampson and his wife, Mary A. Sampson, and Henry Wulff, to subject certain property standing in the name of Mrs. Murphy to certain judgments recovered by the plaintiffs against John C. Murphy, and

on which executions had been returned *nulla bona.* The property sought to be subjected to these debts consists of nineteen lots in Murphy's addition to Rogers' Park, in Cook county, and lots 20 and 21, and the east seventeen feet of lot 22, in Huntoon's addition to South Evanston.

In the fall of 1876 John C. Murphy borrowed $800 from Nicholas Kransz, and to secure the same gave a trust deed on four lots in Murphy's addition. In the spring of 1877 he borrowed $600 from Theodore Nilles, and secured the payment thereof by a trust deed on three other lots in the same addition. At that time he owned the nineteen lots in controversy free from incumbrance, and also five other lots in the same addition which were mortgaged to one Pearson to secure $2600 previously borrowed. He also owned the south part of lot 9 in block 11 and lot 2 in block 5, in said addition. After the making of all these trust deeds, and on July 19, 1877, Murphy married his present wife and took her to live with him in a house on one of the lots he had previously mortgaged to Pearson. On March 14, 1878, being indebted as aforesaid, he, his wife joining, conveyed to his brother-in-law, Robert R. Sampson, the nineteen lots before mentioned, for the consideration, as expressed in the deed, of $500. On August 31, 1878, Nilles foreclosed his trust deed on the lots therein described and bought them in at the sale for $175, and took judgment for the deficiency, $555, in the Superior Court of Cook county. Execution was issued and returned unsatisfied. On October 5, 1888, the judgment was revived and execution was issued, which was returned unsatisfied January 4, 1889. The Kransz note and trust deed were assigned to Henry P. Kransz, who foreclosed in 1884 and took a deficiency judgment for $1290 on March 27, 1889, in the same court. Execution was issued on the same day and returned unsatisfied. On March 27, 1889, a creditor's bill was filed for the same purpose and on the same grounds as the present one, but was dismissed for want of prosecution in June, 1893. On December 1, 1893, the

present bill was filed. On August 3, 1878, John C. Murphy and his wife conveyed to Pearson his equity of redemption in the five mortgaged lots, and also the south part of lot 9 in block 11, which was unincumbered, for a note for $1000 and mortgage of Edward Murphy on two lots in the vicinity, containing a dwelling house. In 1882 the house was burned, and Mrs. Murphy claims that she collected the insurance of $1000 thereon. Out of this insurance money and profits made on the same by Murphy in speculating, it is claimed they bought the South Evanston property for $3000, taking title to Mrs. Murphy. On November 19, 1885, Sampson conveyed the nineteen lots aforesaid to Mrs. Murphy for $500, and all the testimony is that no interest was paid him during the more than seven years that he held the title, and during all which time he claims to have paid the taxes, amounting to $135.25, as found by the master. Lot 2 in block 5, which seems never to have been conveyed away by Murphy, was sold for taxes, and in 1886 Murphy bought the tax titles from the holder.

The cause was referred to the master for a hearing, and a number of objections were filed to his report by appellants, which were overruled. On the hearing before the court appellants filed seventeen exceptions, which were overruled, and the court entered a decree finding the conveyance to Sampson fraudulent as to creditors, and that the $500 paid for the reconveyance of said lots was the money of John C. Murphy, and that the conveyance to Mrs. Murphy was in fraud of creditors, and that said nineteen lots should be subjected to the payment of said judgment; that the $1000 realized by Mrs. Murphy from the insurance on the house upon which she held the Pearson mortgage was the property of Mrs. Murphy, but that the $2000 realized by Murphy in speculating therewith was his own, and that in equity Murphy was the owner of two-thirds of said South Evanston property, and that it ought to be subjected to the payment of said

judgments, and a decree was entered accordingly. The defendants appealed to the Appellate Court, assigning numerous errors, and the complainants filed cross-errors as to that part of the decree giving Mrs. Murphy the $1000 and one-third interest in the South Evanston property. The Appellate Court affirmed the decree. The appellants have taken this further appeal, appellees insisting here on their cross-errors.

The complainants called Mrs. Murphy, and she testified that she had $100 or $200 when she was married, but that it was all spent within a year; that before June, 1881, she got between $400 and $500 from her mother, but kept no account of it; that she did not deposit it anywhere; that she got the Edward Murphy mortgage of $1000 on a piece of ground and a house for signing her name to a deed for the property on which they lived, which her husband owned before they were married; that her interest in the property was one-third; that she had dower in it; that she would not release her dower without receiving something for it; that Murphy transacted the whole business with Pearson; that she had nothing to do with it; that the house burned and she got the insurance money, $1000; that she gave this money to her husband to speculate with,—to buy jury vouchers, county orders, etc.; that he doubled the money for her; that with that money they paid for sixty-seven feet of the South Evanston property, $2300; that they bought the other lot (fifty feet) a little later, for $700; that she kept boarders and earned money in various ways, and saved considerable money; that with the money she got from her mother she bought back the property her husband had been obliged to sell to Sampson, to live on; that she paid him $500; that Murphy told her that Sampson said that he could have the property back at the same price he paid for it; that she had this knowledge both from her husband and Sampson; that Murphy paid no interest to Sampson; that if Sampson wanted to let his brother-

in-law have it without interest he could do so; that it was merely an accommodation matter between Sampson and her husband; that there was no understanding between her and Sampson that she was to take the title to these lots instead of her husband; that she did not know what they were worth when they were conveyed to Sampson,—$10 or $15 per foot,—perhaps not as much as that; that she knew at the time that the lots were worth a good deal more than $500; that she bought these lots with the money she got from her mother; that she used some of the money she got from her mother in household expenses; that she spent part of it in her own private matters; that she could not tell how much of the $500 was from her mother, nor what part she received from her husband, nor how much from keeping boarders or selling milk; that the boarders were provided for by her husband; that he bought some of the cows and she bought the others with his money; that Murphy transacted all the business in connection with the purchase of the South Evanston property; that he bought it for her, as her agent; that she borrowed money on it to improve it, and he transacted all this business for her; that she paid the interest and taxes and special assessments on the property from money furnished by her husband; that she paid the taxes on the nineteen lots from money furnished by him; that at the time the lots were bought he had all he could do to support the family; that their average monthly household expenses were $125 or $150, and their doctor bills about $400 per year. She was not cross-examined by the defense nor called as their witness.

We are satisfied from Mrs. Murphy's testimony that her husband transacted all the business, and that most, if not all, of her own money which she received from her mother was used up in living expenses before she purchased the nineteen lots from Sampson, in 1885.

We are of the opinion that the decree of the Superior Court finding that the conveyance of the nineteen lots

to Sampson was in fraud of the rights of creditors, that the consideration paid Sampson for the reconveyance of said nineteen lots was in fact the money of John C. Murphy, and that the conveyance to Mrs. Murphy instead of to her husband was for the purpose of keeping said lots out of the reach of said complainants and a fraud on their rights as creditors, and that said nineteen lots should be subjected to the payment of their said judgments, is sustained by the evidence. We are also inclined to agree with the finding below that the $1000 insurance money was the money of Mrs. Murphy. Whatever might be said as to whether or not she could, while her husband was in debt, appropriate to herself the whole of the consideration received from the sale to Pearson, when the only interest she had in the property was her inchoate right of dower, still she had an insurable interest in the house covered by the mortgage to her, and so far as the evidence shows we are left to presume that she had this house insured for her benefit, and when it was destroyed collected the insurance money. The burden of proof was on the complainants to show that she was not entitled to this insurance money as against the creditors of her husband. Not having made such proof we are not authorized to find in their favor on this branch of the case. Besides, appellees say that they have uncovered sufficient property to satisfy all of their debts without this money, found by the courts below to be the property of Mrs. Murphy. No necessity is therefore perceived for considering that question further.

The further question, however, remains as to the other $2000 expended in the purchase of the South Evanston property. The trial court decreed that it was the money of Murphy, and that he was therefore the equitable owner of the undivided two-thirds of the Evanston property. Appellant John C. Murphy testified, among other things, that the $1000 insurance money was received in 1882, and that his wife turned it over to him in small

amounts of from $100 to $200 at a time, and that he speculated with it in buying county scrip, jury warrants, etc., while he was employed about the court house, and realized from such speculations upwards of $2000, which, with the $1000, constituted the $3000 used to purchase the Evanston property; that sometimes he would return the amounts received from his wife, with the accumulations, and sometimes would tell her about it, and the effect of this part of his testimony was that both he and his wife regarded not only the $1000, but the amounts he made by his speculations, as the property of the wife. He further testified that before that time he was injured in a railroad accident and for some time was almost totally disabled, but that he was in 1881 employed as watchman in the county building, and was about the same time made justice of the peace, and has since 1883 been employed in the county clerk's office at $60 per month; that as justice of the peace he performed many marriage ceremonies, but could not state, and refused to estimate, what his income from such sources had been. It seems that no separate account was kept between Murphy and his wife, and that some of the moneys realized from the use of the $1000 went into the family expenses.

We are of the opinion, after a consideration of all the evidence, that the conclusion arrived at by the courts below, based upon the master's report, was correct, that the accumulations from the use of the $1000 by Murphy were not the proceeds of any business carried on by Mrs. Murphy, or of any investment of said fund by her, through her husband, as her agent, to which she would be entitled as against her husband's creditors, but that they were moneys realized by his shrewd speculations on his own account, and that they were subject to the payment of his debts. The decree, therefore, which held Murphy and his wife to be tenants in common of the property purchased with the $3000, and that she held the

undivided two-thirds of the property in trust for him, as between herself and the complaining creditors, was as favorable to her as she could reasonably expect.

The appellants earnestly contend that in this respect especially the decree was erroneous, and that the law, since the passage of the act of 1874 concerning husband and wife, is otherwise than as held by the trial court, and cite in support of their contention *Lachman* v. *Martin,* 139 Ill. 450, in which this court said (p. 453): "Since the act of 1874 in relation to husband and wife (Rev. Stat. chap. 68,) a married woman may have her own separate property and make contracts and do business as a *feme sole,* and may avail herself of the services and agency of her husband in the conduct of her business or management of her property, 'without necessarily subjecting it, or the profits arising from his management, to the claims of his creditors.' But an insolvent debtor cannot use his wife's name as a mere device to cover up and keep from his creditors the assets and profits of a business which is in fact his own. The marriage relation affords many opportunities for conducting schemes to defraud creditors, and hence transactions between husband and wife, which have the appearance of being fraudulent, will be closely scrutinized. It is a question of fact, to be determined from all the circumstances of the case, whether or not the husband is carrying on his own business or is merely managing his wife's business. It must clearly appear that the wife is the *bona fide* owner of the capital invested in the business, and that the accumulations which result from the conduct of the business are the legitimate outcome of the investment of her property."

While it is held in the case at bar that the capital used by Murphy in his speculations belonged to his wife, still, as before said, we are of the opinion, from a full consideration of the evidence, that he employed this money, by her permission, in speculations on his own account, and as said in the case cited, "an insolvent debtor

cannot use his wife's name (nor her capital) as a mere device to cover up and keep from his creditors the assets and profits of a business which is in fact his own." Reference may be had to the following among other cases, some of which were decided before and some since the recent statutes concerning the rights of married women: *Brownell* v. *Dixon,* 37 Ill. 198; *Elijah* v. *Taylor,* id. 247; *Wortman* v. *Price,* 47 id. 22; *Wilson* v. *Loomis,* 55 id. 352; *Patton* v. *Gates,* 67 id. 164; *Nelson* v. *Smith,* 64 id. 394; *Robinson* v. *Brems,* 90 id. 351; *Dean* v. *Bailey,* 50 id. 481; *Primmer* v. *Clabaugh,* 78 id. 94; *Blood* v. *Barnes,* 79 id. 437.

While the delay has been considerable we do not think appellees were barred by *laches.*

Finding no error the judgment of the Appellate Court must be affirmed.        *Judgment affirmed.*