## Rosa L. Thompson v. Charles H. Hoppert.

### Gen. No. 4,461.

1. COMMON COUNTS—*when recovery cannot be had under.* A re-covery cannot be had under the common counts where it is not claimed and it does not appear that either party thereto had fully performed the express contract, which is the basis of the suit.

2. PERFORMANCE—*when proof of, essential to recovery.* In order to recover a sum of money claimed to be due from the defendant to the plaintiff, performance by the plaintiff of his obligations is essential to be established where such a performance is a condition precedent to the obligation of the defendant to pay, and no excuse for his non-per-formance will avail, where the declaration relies upon performance and does not count upon an excuse therefor.

3. CONTRACT FOR CONVEYANCE OF LAND—*what does not excuse per-formance of, by vendee.* Lack of good title by the vendor is no excuse for the failure of the vendee to make his payments as required by the contract, where the vendor is under no obligation to make any convey-ance until full payment shall have been made by the vendee.

4. REMARKS OF COUNSEL—*when ground for reversal, notwithstanding objections thereto were sustained.* Notwithstanding improper remarks of counsel were objected to and the objections thereto sustained, they are, where of a seriously prejudicial character, ground for reversal.

Action of assumpsit. Appeal from the Circuit Court of Peoria County; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed May 27, 1905.

ARTHUR KEITHLEY, for appellant.

JOSEPH A. WEIL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is an action of assumpsit brought by Charles H. Hop-pert against Rosa L. Thompson and Herbert B. Dickinson, charging them as partners, by the style of The Home Savings & Investment Company. The declaration consisted of a special count and the common counts. Dickinson did not defend. Mrs. Thompson filed the general issue, and a sworn plea denying joint liability with Dickinson, and a sworn plea averring that she is not and never has been a partner of defendant Dickinson, and that at the time of the making

of the supposed promises in the declaration mentioned, she was and ever since has been and is now a married woman, the wife of Robert Thompson; and that her said husband has not abandoned or deserted her, and is not idiotic, or insane, or confined in the penitentiary, and that he has not at any time nor in any manner, consented that she might enter into or carry on any partnership business with defendant Dickinson; wherefore she could not become, and has not become, and is not, and never has been, a partner of said defendant Dickinson, as charged. Issues were joined on the first and second pleas, and the third plea was treated as if issue had been joined thereon. There was a jury trial, and a verdict for plaintiff for $1,261.10. Upon motion for a new trial, plaintiff remitted $150. The motion for a new trial was denied, and plaintiff had judgment against defendants as copartners in the sum of $1,111.10 and costs. Mrs. Thompson prosecutes this appeal from said judgment.

At a certain time prior to the commencement of this suit, Hurd and Dow were partners, doing business as the Home Savings & Investment Company, and they entered into a written contract with Hoppert. Afterwards Dickinson bought out the business, and became himself the Home Savings & Investment Company. Hoppert was in default under his contract at this time. Dickinson thereupon took Hoppert's note for the amount he was then in arrears under the contract, and caused a new contract to be prepared and executed, of the same date and tenor as the original contract, and Hoppert made further payments thereon. It is the claim of plaintiff that afterwards Mrs. Thompson became a partner with Dickinson in this business, under the name Home Savings & Investment Company. The contract was dated June 15, 1901. The contract and the attached conditions embodied a scheme by which Hoppert might become the purchaser of real estate by easy payments. The Home Savings & Investment Company was the first party and Hoppert the second party. It named $2,500 as the purchase value and $3,375

as the face value. Hoppert was to· pay the investment
company at Peoria on or before the 20th of each month,
thirty cents on each $100 of the purchase value and the
same was to be credited on the face value. He was to con-
tinue such payments till he became entitled to possession
of real estate under the contract. Thereafter he was to
pay seventy cents on each one hundred dollars of the pur-
chase value each month till he had paid the face value.
The difference between the purchase value and the face
value was to go to the first party as its compensation for
its services. Hoppert therein made the first party his
agent and agreed all moneys he paid in might be used
according to the plans of the first party for the benefit of
those entitled to purchase real estate before him. The
first party agreed to number consecutively all contracts it
received and accepted. Whenever Hoppert had made eight
monthly payments, if he had not then become entitled to
possession, he was to be credited on the contract with in-
terest at six per cent. on those and all subsequent payments
till he became entitled to possession. When Hoppert's
number had been reached he then became entitled to pos-
session of real estate if he had made eight monthly pay-
ments. The first party was then to give him thirty days'
notice and he was to select a'piece of real estate acceptable
to him, and furnish the first party a description thereof,
and an abstract of title and a fee of $5 for the examination
of the abstract. If this selection was acceptable to the
first party as to title, value and terms of purchase, the de-
scription thereof was to be inserted in the contract, and it
then became a contract by which the first party was bound
to purchase the tract for Hoppert on twenty-four equal
monthly payments, and to let him into possession as lessee.
When Hoppert received possession he was to keep the prop-
erty insured for the protection of the first party, pay all
taxes and assessments and keep the same in good repair.
If in default for ten days after he received possession and
before he obtained a deed, Hoppert was to have an exten-
sion of sixty days from the date of the last payment he

had made; and if then still in default he agreed to surrender peaceable possession without notice, and that all payments made should be considered as rent. When one-third of the face value had been paid, the first party was required to convey said real estate to Hoppert or to cause it to be so conveyed, and he was to give back a first mortgage on the real estate to secure the payment of the rest of the face value. All these payments by Hoppert were to be without interest.

It is not claimed by appellee that this contract had been performed in full by either party. He sought to prove a breach of the contract by the Investment Company. In that state of the case, he could not recover under the common counts. Phelps v. Hubbard, 59 Ill. 79; Clause v. Press Co., 118 Ill. 612; Parmly v. Farrar, 169 Ill. 606; Wilderman v. Pitts, 29 Ill. App. 528; Bean v. Elton, 44 Ill. App. 442. The recovery, therefore, must be sustained under the special count, if at all.

The special count averred that defendants, on, to wit, the 15th day of June, A. D. 1901, by the name and style of the Home Savings & Investment Company, entered into a contract with plaintiff, by the terms of which defendants agreed to sell and convey to plaintiff, by good title, clear and free from all incumbrances, said lot therein described, upon being paid the sum of $9 per month for each month after June 15, 1901, for a period of thirteen months up to July 1, 1902, and thereafter the sum of $18.75 per month until said defendants had received upon said contract $275; that in consideration thereof, and in pursuance of the terms of said contract, plaintiff did pay to the defendants all sums required of him to be paid by said contract amounting in all to $225, and that he has at all times thereafter been ready, able and willing to pay the balance upon the same, according to the terms and provisions of said contract; but that defendants did not, nor did either of them, ever have any title to said premises, or any right to convey the same. It further averred that plaintiff entered into possession of said premises and that afterwards, on or

about December 6, 1903, said defendants and plaintiff were dispossessed of said premises by the true and legal owner thereof; that after plaintiff entered into possession of said premises under said contract, he expended, in materials and repairs and labor upon said property, certain moneys, and that by reason of the failure of title to said premises in said defendants, plaintiff was forced to vacate the same, and thereby was damaged, in addition to the amount paid by him to said defendants, and lost the benefit of his contract, and sustained damages in the sum of $5,000.

There are several reasons why a recovery under this special count is not justified by the proofs. First of all, plaintiff did not complete the performance of his contract, or make all the payments required to be made by him. He does not claim to have made any payment later than that due January 20, 1903, and there is evidence tending to show that one or two payments prior to that date had not been made. What plaintiff sought to show was that facts had occurred, besides the alleged lack of title which excused him from further performance, and entitled him to recover back what he had already expended and what he lost in losing the premises. The law, however, is that in order to support a declaration averring performance, the plaintiff must prove the performance as alleged; and under such a declaration, plaintiff cannot be permitted to prove an excuse for non-performance by him; but if plaintiff has not performed, and he relies upon what he claims to be a sufficient excuse for non-compliance, that excuse must be averred in the pleadings and established by the evidence. Higgins v. Lee, 16 Ill. 495; Baird v. Evans, 20 Ill. 30; Michaelis v. Wolf, 136 Ill. 68; City of Peoria v. Construction Co., 169 Ill. 36; Murphy v. Nilles, 62 Ill. App. 193. As the allegations and the proofs do not correspond, the judgment cannot be sustained.

But if the facts sought to be proved had been sufficiently averred, we are of opinion that the evidence failed in several respects to establish a legal excuse for the failure of plaintiff to continue the payments he had agreed to make.

A vendor who agrees to convey a good title at a future date, after the completion of various payments to be made, is not required to have the title when he makes the contract, or at any time prior to the tender of the last payment. He is entitled to the entire life of the contract in which to procure the title, and it is therefore no excuse by the vendee for a failure to make any of the intermediate payments that the vendor had not acquired title. Foster v. Jared, 12 Ill. 451; Monsen v. Stevens, 56 Ill. 335; Eames v. Der Germania Turn Verein, 8 Ill. App. 663; and the authorities collected and reviewed in Augsberg v. Meredith, 101 Ill. App. 629. Moreover, the particular contract here in suit, and the scheme or plan therein embodied, did not contemplate that the Investment Company had title when the contract was made. The scheme seems to have been that when the second party to the contract had made eight monthly payments, and his contract had been reached in its numerical order, he might select a piece of real estate valued at $2,500, and acceptable to the Investment Company as to title, value and terms of purchase, and thereupon the Investment Company would enter into a contract with the owner to purchase and pay for it in twenty-four equal monthly payments, and would let the second party into possession as lessee, and when said second party had paid one-third of the face value of the contract, then the first party would convey said premises to the second party, or procure a conveyance thereof to him, and take from him a first mortgage to secure the unpaid portion of the face value of the contract. The time, therefore, had not arrived when plaintiff was entitled to a conveyance, and therefore the fact that the title had not yet been procured did not excuse plaintiff for failing to continue his payments. What plaintiff did prove was that on January 14, 1903, the office of the company in Peoria was closed, and it did not thereafter continue doing business. Dickinson still lived in Peoria, and while it is argued that he was insolvent, and that the Investment Company was rotten, and that the investors lost their money, there is very little proof to sup-

port these propositions. If they are true and are material, they should have been proved. The evidence seems to indicate that Mrs. Thompson is wealthy, and plaintiff insists that she is a partner, and liable for the performance of his contract, and that he knew or was advised she was a partner long before he ceased making his payments. She was the owner of a bank at Bradford, in Stark county. If she was a partner, then, so far as this record discloses, the concern was far from being insolvent. Undoubtedly under this contract, after the second party had selected a lot, and the first party had entered into a contract with its owner to procure the title, and the second party had been let into possession, the second party was thereafter entitled to be protected in that possession by the first party; and if the first party failed to make payments as agreed to the owner of the lot, and because thereof the second party was evicted, the second party would be excused from making payments on this contract after the first party ceased to make such payments to the owner. Here there is no proof as to what contract the Investment Company made with Mrs. Adelman, the owner of the lot, nor when, if ever, the first party ceased making her the payments, nor when she began proceedings to oust the second party; nor is there any proof that those proceedings were against both the first party and the second party, as averred in the special count. All that is proven is that in the following December, the second party was evicted at her suit; but for aught that this proof discloses, plaintiff's failure to make the payments he had agreed may have been the very reason of the failure of the Investment Company to keep up its payments with Mrs. Adelman, if it did so fail, as to which there is no proof. To make this eviction furnish an excuse, plaintiff should have shown when the proceeding was instituted, and unless he gave notice to the Investment Company to defend the suit, or there were such circumstances as made it the legal duty of the Investment Company to defend the suit, then plaintiff would be bound to show that there had been such breach of the contract with

Mrs. Adelman as authorized her to sue for and recover possession of the premises.

It seems that before the trial of this case, a suit had been brought against these defendants by some other person, and that the present attorney for Mrs. Thompson was an attorney for the plaintiff in that case. The plaintiff in this suit, at various steps of the trial, sought to turn this fact to the disadvantage of Mrs. Thompson. An effort seems to have been made to try her present attorney for unprofessional conduct in taking different sides of the same question in different suits, and a bitter attack upon him was made in the closing address to the jury by plaintiff's counsel. All of this was improper. If counsel for Mrs. Thompson had been guilty of any unprofessional impropriety in taking this case, in view of his former relations to another case, that fact had no tendency to make a cause of action against Mrs. Thompson in this case, and its use before the jury was improper and highly prejudicial to her. The court sustained objections to the improper remarks made in the closing address to the jury, but counsel for the plaintiff continued the same line of argument, notwithstanding repeated rulings of the court against him. It may be that counsel for Mrs. Thompson also made improper remarks, but the court should not have permitted any of this line of conduct by counsel on either side, and our conclusion is that the case of Mrs. Thompson was highly prejudiced thereby.

Several other questions were presented and earnestly argued, but as they are not likely to arise again in the same form, we deem it unnecessary to discuss them. For the reasons above stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*