Bennett v. Boshold.

---

### Robert C. Bennett v. Paul J. Boshold, et al.
#### Gen. No. 12,120.

1. CREDITOR'S BILL—*how equity will scrutinize conveyance between husband and wife.* The marriage relation affords peculiar opportunities for practicing fraud upon creditors, and equity will therefore closely scrutinize all conveyances between husband and wife which injuriously affect the rights of creditors.

2. VOLUNTARY—*when conveyance of land between husband and wife deemed.* A conveyance by a husband to his wife which injuriously affects the rights of creditors is deemed voluntary where the consideration for the conveyance and the good faith of the transaction is not established by affirmative evidence adduced by such husband and wife.

3. VOLUNTARY CONVEYANCE—*what evidence competent as tending to establish.* Evidence which tends to show that the grantee in a conveyance knew of the indebtedness, claimed to have been injuriously af-

fected by such conveyance, is competent in a proceeding to set aside the same.

4. LACHES—*when does not bar creditor's bill.* Held, that a delay of a little more than four years did not constitute such laches as to bar the prosecution of a creditor's bill.

Bill in nature of creditor's bill to set aside conveyance. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed November 2, 1905.

WILLIAM E. CLOYES, for appellant.

ARNOLD TRIPP, for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a decree dismissing, for want of equity, a bill filed by appellees to set aside a conveyance of certain premises by Paul J. Boshold to Frida Boshold, his wife. No question is raised as to the pleadings. March 29, 1899, Robert C. Bennett, the appellant, filed a bill against the appellees and others to foreclose a mortgage of lot 17 in block 7 in Adolph Hegewisch's subdivision, in the city of Chicago, executed by appellee Boshold and his former wife, Catherine Boshold, deceased. Summons was issued and was served on appellees April 7, 1899. April 21, 1899, the appellees were defaulted and the bill was taken for confessed as against them, and May 24, 1899, it was taken for confessed against the other defendants, and a decree was entered finding that the defendant Paul J. Boshold was indebted to the complainant Bennett in the sum of $339.90, and the further sum of $50 as complainant's solicitor's fees, and directing a sale of the mortgaged premises. The proceeds of the sale being insufficient to discharge the indebtedness found by the decree, the court, June 28, 1899, entered a deficiency decree against the appellee, Paul J. Boshold, for the sum of $292.25. An execution was issued on that decree, the sheriff's return of which is, that July 5, 1899, he made a demand on Boshold for money or property to satisfy the execution, and delivered to him a copy of

the execution, and notified him that he must file a schedule of his property within ten days, in order to claim exemption. The execution was returned no part satisfied September 26, 1899. Boshold filed a schedule, in which it is stated that he had no personal property; that all he had was the clothes he had on.

April 18, 1899, three days before appellees were defaulted, and the bill taken for confessed against them, Paul J. Boshold, appellee, conveyed, by warranty deed, to his wife, Frida Boshold, the appellee, for the expressed consideration of $1,000, the following described premises: Lot 33 in S. D. Jacobson's subdivision of block eight (8) in William Lill and the heirs of Michael Diversey's subdivision of the southwest half of the northwest quarter of section twenty-nine (29), township forty (40), north range fourteen, east of the third principal meridian, situated in the city of Chicago, in the County of Cook, in the State of Illinois; subject, however, to an existing incumbrance of $1,600. The deed was acknowledged, and was filed for record in the recorder's office April 18, 1899.

The evidence is that the property above described was all that Paul J. Boshold owned, except lot 17 in block 7 in Hegewisch's subdivision, the mortgage of which was foreclosed, and the clothes he wore; and that the property conveyed by him to his wife was, at the time of the conveyance, of the value of from $3,500 to $4,000.

Fred W. Story testified that December 3, 1896, he called on Paul J. Boshold, and had a conversation with him about the note and mortgage and the payment of the same, and that Boshold said he did not propose to pay it, and claimed that he had been swindled.

It is contended by appellant's counsel that the evidence made a *prima facie* case that the conveyance by Paul J. Boshold to his wife was made for the purpose of hindering and delaying their creditor, the appellant, from collecting the indebtedness secured by the mortgage which was sought to be foreclosed, and that it was incumbent on the appellees to satisfactorily explain the transaction, if susceptible of explanation.

Lachman v. Martin et al., 139 Ill. 450, was a bill by a judgment creditor, to subject to the payment of the judgment certain lands, the title to which was in Mrs. Martin, the wife of Martin, the judgment debtor. It appears from the statement of the case that the lands were purchased prior to the judgment, and the claim of the Martins was that they were purchased with Mrs. Martin's money. The Circuit Court decreed for the defendants and this court affirmed the decree, but the Supreme Court reversed the decree, saying, among other things: "The marriage relation affords many opportunities for conducting schemes to defraud creditors, and hence transactions between husband and wife which have the appearance of being fraudulent will be closely scrutinized." This language is quoted with approval in Murphy v. Nilles, 166 Ill. 99, 107. That also was a creditor's bill to subject property standing in the wife's name to judgments recovered against her husband. It appears from the statement of the case in the opinion, that March 14, 1878, Murphy being then indebted to Nilles and also to one Kransz, he and his wife conveyed the lands to one Sampson, Murphy's brother-in-law, for an expressed consideration of $500, and that, subsequently, trust deeds executed by Murphy to secure his indebtedness to Nilles and to Kransz were foreclosed, and deficiency decrees were entered. It also appears that Sampson, in 1885, conveyed the premises to Mrs. Murphy for the expressed consideration of $500. The trial court found that the conveyance to Sampson was fraudulent as to creditors; that the $500 paid for the reconveyance of the premises to Mrs. Murphy was her husband's money, and that the conveyance to Mrs. Murphy was in fraud of creditors, etc. The decree was affirmed by this and the Supreme Court, and the latter court say, among other things: "An insolvent debtor cannot use his wife's name, nor her capital, as a mere device to cover up and keep from his creditors the assets and profits of a business which is, in fact, his own." It is obvious that the principle thus announced is equally applicable to a conveyance by a husband to his wife for the purpose of "covering up and keeping from his creditors" his real property.

Bennett v. Boshold.

Hauk v. Van Ingen, 196 Ill. 20, was a creditor's bill to set aside a conveyance by Hauk to his wife. The bill was filed February 11, 1892, and alleged the recovery by the appellees, October 2, 1891, of a judgment against Hauk and others for $2,254.04, the issuance of execution and the return of the same unsatisfied, and a conveyance by Hauk to his wife January 13, 1891. The only defense made was that the property was purchased with the wife's money and belonged to her. The court below sustained the bill, and this court and the Supreme Court affirmed the decree. The Supreme Court thus states the question presented for decision: "The question involved in this case is, whether a deed made by a judgment debtor to his wife, while he was in debt, is fraudulent and void as against the judgment creditor, so as to subject the land conveyed by the deed to the claim of the judgment creditor, or whether it is a valid deed, vesting title to the land in the wife, so that she can hold it free from the claim of such judgment creditor." The court held, on the facts in evidence, that the money with which the land was purchased was, in law, the husband's money, and that the conveyance to his wife was fraudulent and void as to creditors.

In the present case the appellant's evidence was amply sufficient to sustain an attachment, under section 1 of the Attachment Act, and equity follows the analogies of the law. A conveyance made under the circumstances disclosed by the evidence in this case is void under chapter 5 of the statute, 13th Elizabeth, against conveyances of lands to delay or defeat creditors, which chapter is law in this state. 1 Story's Eq. Juris., 12th ed., sec. 352 *et sequens;* Hurd's Rev. Stat. 1903, chap. 28, p. 435.

We are of opinion that it was incumbent on appellees to prove that there was a sufficient consideration for the conveyance to Mrs. Boshold, and the good faith of the transaction, if such was possible.

In Seitz v. Mitchell, 94 U. S. 580, it was claimed by Seitz and wife that the lots in question, which were sought by the complainant to be subjected to the payment of judg-

ments recovered against the husband, were purchased by
the wife with her own money. The conveyances of the
lots were made to the husband, and the legal title was in
him.   The court held that it was incumbent on the appel-
lants, Seitz and wife, to produce *affirmative* evidence in
support of the claim that the lots were purchased by the
wife with money which she owned separate and apart from
her husband, saying, among other things: "Such is the
community of interest between husband and wife, such pur-
chases are so often made a cover for a debtor's property,
are so frequently resorted to for the purpose of withdraw-
ing his property from the reach of his creditors and pre-
serving it for his own use, and they hold forth such temp-
tations for fraud, that they require close scrutiny.   In a
contest between the creditors of the husband and the wife
there is, and there should be, a presumption against her
which she must overcome by affirmative proof.   Such has
always been the rule of the common law; and the rule con-
tinues, though statutes have modified the doctrine that gave
to the husband absolutely the personal property of the wife
in possession, and the right to reduce into his possession
and ownership all her choses in action.   Authorities to this
effect are very numerous."   Numerous cases are cited in
support of the language quoted.   The following cases are
to the same effect:   Carson v. Stevens, 40 Neb. 112;   Red-
mond v. Chandley, 119 N. C. 575, 580; Booher v. Worrill,
57 Ga. 235; Dresher v. Corson, 23 Kan. 313.   See, also,
Wait on Fraudulent Conveyances, 3rd ed., sec. 301.

Appellees introduced no evidence.   No valuable consid-
eration for the conveyance having been proved, it must be
considered a voluntary conveyance.   The fact that a con-
sideration of $1,000 is expressed in the deed is not evidence
that $1,000, or any amount or thing of value, was paid.
Ib. sec. 301 and note 3, p. 29; McGintry v. Reeves, 10 Ala.
137; Falkner v. Leith, 15 ib. 9; Ball v. Campbell, 134 Penn.
St. 602; De Farges v. Ryland, 87 Va. 404.

Robert C. Bennett, called by appellant, testified that in
March, 1899, he had a conversation with the appellee Frida

Boshold about the $300 note, to secure which the fore-
closed mortgage was made, and was then asked to state
what the conversation was, when the court, on objection,
ruled against the question.    Appellant's solicitor then made
the following offer:

"I offer to prove by Mr. Bennett that prior to the insti-
tution of the foreclosure suit upon which this deficiency
decree was taken, he called at the house of Paul J. Boshold
and the defendant, Frederica Boshold, and there had an
interview with Mrs. Frederica Boshold in regard to these
notes, and that at that time Mrs. Frederica Boshold told
him that she had talked the matter over with her husband;
that her husband had said that the notes had been secured
by perpetrating a fraud upon him and that he would not
pay the same, and that he would do all in his power to
avoid the payment of the same, and that the claim was un-
just and inequitable—that they had been swindled by a
man by the name of Berner; that they understood they
were getting two houses and two lots, when in fact they
only secured one for which this note was given."

The offered evidence was, as against Frida Boshold, com-
petent, relevant and material.    If admitted, it would have
tended to prove that she knew of the indebtedness se-
cured by the mortgage, and would also have borne on the
question of her good faith in accepting the conveyance
from her husband.    Appellees' solicitor admitted that Mrs.
Boshold knew of the note, but the offer goes further than
that.

The deficiency decree was entered June 28, 1899, and
the bill in the present case was filed September 29, 1903.
Appellees' counsel urge, but rather faintly, that appellant
is guilty of laches in not having filed his bill sooner.

In Murphy v. Nilles, 166 Ill. 99, heretofore referred to,
the deficiency decree in favor of Nilles was entered August
31, 1878, and the bill was not filed till December 1, 1893.
It was objected in the case, when before this court, that
the complainant was guilty of laches, and the objection
was argued by counsel for Murphy and considered by the

court, and was not sustained (Murphy v. Nilles, 62 Ill. App. 193, 194–5, 199), and the Supreme Court, on appeal from this court, say: "While the delay has been considerable, we do not think appellee was barred by laches." 166 Ill. p. 108. In this case the delay was much less than in the case cited, and we cannot hold that appellant is barred by laches.

. The decree will be reversed and the cause remanded, for further proceedings in conformity with this opinion.

*Reversed and remanded.*